## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**RICHARD GREGORY,**

    **Plaintiff,**

-vs-             **Case No.  6:12-cv-1505-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Although oral argument was requested by Plaintiff's counsel, it would not provide any further assistance in reaching a decision. Doc. 19.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## I.  BACKGROUND

### A.  Procedural History

Plaintiff filed for a period of disability and Disability Insurance Benefits on October 2, 2009, alleging an onset of disability on June 1, 1979, thirty years earlier.  R. 105.  His date of last insured was June 30, 1983, or twenty-six years earlier.  R. 11.  He alleged disability due to a back disorder,

knee pain, congenital deformities in the feet, with only three toes and an indentation in each foot, back and neck pain, hearing loss in his right ear, and depression.  R. 39-41, 49, 60, 127.  His application was denied initially and upon reconsideration.  R. 60-61.  Plaintiff requested a hearing, which was held on February 8, 2011, before Administrative Law Judge Lisa B. Martin (hereinafter referred to as "ALJ").  R. 20-59.  In a decision dated February 25, 2011, the ALJ found Plaintiff not disabled as defined under the Act during the relevant period through June 30, 1983.  R. 9-15.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 5.  The Appeals Council denied Plaintiff's request on August 6, 2012.  R. 1-3.  Plaintiff filed this action for judicial review on October 3, 2012.  Doc. 1.

### B.      Medical History and Findings Summary

Plaintiff was born on February 23, 1947 and was 63 years old on the date of the hearing; however, the ALJ noted that the relevant time frame for purposes of determining disability was 1979 to 1983, when Plaintiff was age 36 and younger. R. 7.  Plaintiff attended college, and previously worked as a psychiatric aide and as a farmer, putting up hay and feeding cattle.  R. 27-29, 35.

Plaintiff only presented two records from the applicable time period – (1) a one-sentence memorandum dated August 28, 1973 that said the "physical education requirements [at college] need to be waived" based on medical reports; and (2) a letter from Dr. Handler dated August 6, 1973 that describes an injury to the lumbar spine, a knee injury, and "a most satisfactory recovery." R. 278.  Due to the age of the medical records Plaintiff testified those were all the records that existed. R. 38.

After reviewing the sparse medical records from the relevant time period and Plaintiff's testimony, the ALJ found that Plaintiff suffered from the severe impairments of congenital foot disorders, lumbar and thoracic spine disorders, left knee disorder, a left ear hearing disorder, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 11.  The ALJ determined that Plaintiff retained the residual

functional capacity (RFC) to perform a limited range of sedentary work in that Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently; he could sit for about six hours and stand/walk for about two hours in an eight-hour workday, but required the ability to alternate sitting and standing; he also had other postural and environmental limitations, and he was limited to routine uncomplicated tasks.  R 12.  In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  R. 13.  Based upon Plaintiff's RFC, for the period prior to his date last insured, the ALJ determined that he could not perform past relevant work.  R. 13.  Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that, through the date of last insured, Plaintiff could perform work existing in significant numbers in the national economy as addressor, cutter paster, surveillance system monitor. R. 14-15.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time from June 1, 1979, the alleged onset date, through June 30, 1983, the date last insured.  R. 15.

Plaintiff now asserts four points of error.  First, he argues that the ALJ erred by not properly considering the evidence of record which clearly reflected that the Plaintiff had suffered from congenital problems, including deformed feet and spinal problems.  Second, he argues that the ALJ erred in evaluating his credibility.  Third, Plaintiff contends the ALJ erred by relying on the VE's opinion that Plaintiff was capable of light and sedentary work during the relevant period.  R. 16. Fourth, he asserts that the ALJ erred by failing to consider the recent opinion of an examining physician that Plaintiff was disabled.  All issues are addressed, although not in the order presented by Plaintiff.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing

-4-

past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    Plaintiff's RFC and the examining physician's opinion

Plaintiff argues that the ALJ erred in failing to adequately consider evidence that he suffered from congenital problems since birth, and the examining physician's opinion that he "qualifies for Social Security disability."  The Commissioner argues that because Dr. Shoemaker's opinion does not bear on Plaintiff's insured period, does not identify any limitations, and is inconsistent with the evidence of record, the ALJ could not possibly have credited the opinion.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

"The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180, at *2 (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)). "[T]he opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id.* at *2.

Plaintiff admits that there was a lack of medical records from the relevant period but contends that there was other medical evidence in the record sufficient to support the Plaintiff's complaints as to the limiting effects of the Plaintiff's impairments on the Plaintiff's ability to perform in a work setting and maintain substantial gainful employment. Doc. 19 at 14-15.

Plaintiff argues that the record shows he suffered from congenital problems since birth, including deformed feet, as well as congenital back problems, as reflected in his testimony at the hearing and per the examining physician.  Plaintiff was referred to the examining physician, Dr. Shoemaker, in 2009 by his primary care physician due to complaints of pain in his back and his left leg. R 213-14.  Dr. Shoemaker noted that the Plaintiff suffered from lumbar spondylosis, severe roto-scoliosis, thoracolumber, as well as congenital conformity of both feet.  R. 214 (based on physical evaluation and x-rays). Dr. Shoemaker opined that he felt Plaintiff "qualifies for Social Security disability in view of his congenital deformities and his spinal deformities." R. 214.  Plaintiff contends that the ALJ erred in not discussing Dr. Shoemaker's evaluation and opinion from 2009. He argues that by ignoring Dr. Shoemaker's opinion, which corroborated Plaintiff's testimony as to the congenital nature of the Plaintiff's impairments and that his physical impairments had been the same for over forty years, the ALJ failed to properly consider the congenital long-term nature of his impairments.  Doc. 19 (citing *Ray v. Chater*, 934 F. Supp.347 (N.D. Cal.1996) and *Adams v. Chater*, 93 F.3d 712 (10th Cir. 1996)).

Plaintiff apparently characterizes Dr. Shoemaker as a "treating physician," arguing that he had "full knowledge of Plaintiff's medical conditions from Plaintiff's referring primary care physician, Dr. Khan." Doc. 19 at 18.  However, Dr. Shoemaker only saw Plaintiff a single time on July 17, 2009, and while he ran some tests and reviewed Dr. Khan's findings, that was nothing different from consultative examinations by other consultative physicians. R. 213-18[1]. Doc. 19 at 18. Crawford, 363 F.3d at 1160 (holding the opinion of a one-time examining doctor was not entitled to great weight); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (a doctor who examines claimant once is not considered a treating physician).

The ALJ discussed the medical evidence from 1973 through Plaintiff's date of last insured, 1983:

> An August 6, 1973, medical note from E. Handler, MD, reflects the claimant was first seen December 8, 1971, status post a severe contusion of the lumbar spine with extreme muscle spasm. On January 29, 1973, the claimant slipped and sustained an internal meniscus injury of his left knee, which required surgical procedure. Post knee surgery, the claimant obtained a very satisfactory recovery. He was able to ambulate without the need for assistance, he had no limitation of range of motion of the left knee, and no swelling. I note that these dates of treatment reflect periods prior to the claimant's alleged date of onset of disability (Exhibit 7F).

R. 13.

Due to the age of the medical records, Plaintiff testified that only the two records provided as part of the Social Security Record were the ones that still existed. R. 38.  The ALJ accurately discussed the only two records from the applicable time period – (1) a one-sentence memorandum dated August 28, 1973 that said the "physical education requirements [at college] need to be waived" based on medical reports; and (2) a letter from Dr. Handler dated August 6, 1973 that described an injury to the lumbar spine, a knee injury, and a one-month hospitalization from December 1971 to January 1972, which resulted in "a most satisfactory recovery"; Dr. Handler advised that Plaintiff

---

[1]There is a redundant set of the identical evaluation records from July 17, 2009 at R. 281-86.

should be excluded from any physical activity, apparently relating to physical education in college. R. 278. Plaintiff also provided a Selective Service registration card showing he was classified as "1Y," (R. 110) or as Plaintiff testified, physically disqualified from joining the military, but the record did not contain any information on Plaintiff's actual impairments.

The Commissioner concedes that the ALJ did not expressly discuss or designate the weight afforded to Dr. Shoemaker's 2009 report, but argues the omission was harmless. Doc. 20 at 8. Because Dr. Shoemaker's opinion does not bear on Plaintiff's insured period, does not identify any limitations, and is inconsistent with the evidence of record, the ALJ could not possibly have credited the opinion (Tr. 213-14). Accordingly, remand to have the ALJ discuss and weigh Dr. Shoemaker's opinion would serve no practical purpose and would be a waste of judicial and administrative resources. See N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969) (when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game").

The Commissioner also argues that it is Plaintiff's burden to introduce evidence in support of his application for benefits and he has failed to produce adequate evidence that he became disabled before the date of last insured, June 30, 1983. The Commissioner also argues that Dr. Shoemaker's opinion that Plaintiff "qualifies for disability" is not a medical opinion and not entitled to any particular weight because whether an individual is disabled is an issue reserved to the Commissioner.

The Commissioner also argues, more importantly, that Dr. Shoemaker's opinion post-dated the expiration of Plaintiff's insured status by approximately twenty-six years, making its relevancy tenuous at best. As the Commissioner correctly points out, Dr. Shoemaker did not indicate whether Plaintiff was disabled *on or before June 30, 1983*; his July 2009 opinion was phrased in the present tense: "he qualifies for Social Security disability." R. 214. Dr. Shoemaker's report does not

constitute relevant evidence relating to the time Plaintiff alleges that he was disabled from 1979 to 1983.

As the Commissioner points out, Plaintiff had the same congenital conditions prior to his alleged onset date, at the time when he was able to work as a farm worker and as a psychiatric aide. R. 28, 51.  Without corroborating objective evidence of physical limitations during the relevant period, 1979 to 1983, Plaintiff cannot establish that his congenital abnormalities were disabling through his date last insured.

The ALJ's omission of Dr. Shoemaker's 2009 examination of Plaintiff and his opinion that Plaintiff "qualifies for disability" were based on substantial evidence because the relevant time period for Plaintiff's allegations of disability was 1979 to 1983. In the alternative, the omission of Dr. Shoemaker's opinion was harmless error because it was so remote in time to the applicable period.

**B.      Pain and credibility**

Plaintiff asserts that the ALJ erred in evaluating his credibility, finding his limitations were not credible to the extent they were inconsistent with the ALJ's RFC assessment that he could perform a limited range of sedentary work. R. 13.  Plaintiff contends that the Administrative Law Judge, while citing the medical records as a whole, gave insufficient reasons for rejecting Plaintiff's testimony as to the limiting effects of the pain and physical restrictions. Doc. 19 at 14.  The Commissioner argues that the ALJ properly found plaintiff's subjective complaints not credible.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Plaintiff's testimony relevant to the time period from 1979 to 1983 was that he was basically having the same problems at the time of the hearing in 2011 that he was born with, such as only three toes and indentations on each foot, and that he had been having the same level of pain since the 1980's.  R. 39-40.  Prior to the time period, he had left knee surgery in 1973; and he fell in 1974 due to problems with his right knee, but he did not have surgery on it.  R. 38.  He also had constant shoulder and back pain from his neck to his lower back; the only place he did not have pain would be on the right side of his neck.  R. 40.  He testified that it hurt to walk, his knees hurt, and his back hurt; he felt sharp and stabbing pain that radiated up and down, pretty much all the time.  R. 41.  Plaintiff also testified that in the early 1980's, he was living with his adoptive mother, and he was still living with her at the time of the 2011 hearing. R. 41.  In the early 1980's he would need all day to do the chores around the house including the laundry, but he could functionally take care of himself, although it would take him all day because he was in a great deal of pain.  R. 42.  He could pick up a gallon of milk with two hands, and he had more downward than upward strength. R. 42-43.  If he stood for five minutes in one position, his legs would become numb and he would have pain and feel like he was almost falling.  R. 43. He could only walk about a tenth of a mile and would have to stop due to the pain and sit down. R. 44.  He testified that in the early 1980s he could walk down the street and back three blocks, but he avoided steps, and he could sit about 30 minutes before he had to get

up and move around because his legs would go numb and tingly.  R. 45.  At times he would have to slide off on the floor after siting on a sofa and get on his back to reposition himself and relieve pressure; he would have to remain on his back about 30 minutes. R. 46-47.  Plaintiff also testified that the pain affected his ability to concentrate, and in the early 1980s, he could only concentrate about 30 minutes. R 48-49.  He also had trouble hearing out of his right ear. R. 49-50.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, she clearly was aware of the governing standards for evaluating subjective complaints because she cited the applicable regulations and Social Security Ruling ("SSR") 96-7p.  R. 12.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  The ALJ complied with those standards, and she obviously determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that she had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that she had to articulate a reasonable basis for her determination.  In that respect, in discussing Plaintiff's RFC, the ALJ stated:

> At the hearing, the claimant testified that for the period from his June 1, 1979, alleged date of onset through his June 30, 1983, date last insured, he could not perform even sedentary work because he was unable to sit for more than 30 minutes at a time without having to change positions and lie on the floor to relieve his severe back pain. The claimant testified that for the period at issue, he was in pain all day, every day. He testified that if he twisted or turned, he would be in constant pain. He testified his pain began in the neck region and traveled down to the bottom of his feet. The claimant testified his neck hurt, his back hurt, and his knees hurt.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to have caused the alleged symptoms. However, the claimant's statements concerning the intensity, persistence

and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant is deemed a less than fully credible witness to the extent he has claimed disability.  In terms of the claimant's allegations, there is no objective medical evidence from any treating and/or examining practitioner for the period at issue, nor are there any specific findings made on clinical examination or evaluation to support the level of impairment severity alleged by the claimant. While the claimant's recent medical evidence of record suggests his medically determinable impairments could reasonably have been be expected to cause some pain and limitation of function prior to his date last insured, such pain and functional limitation would not have precluded the claimant from performing the activities described in the assessed residual functional capacity (RFC).

While it only addresses a period prior to the claimant's alleged date of disability, I give significant weight to the August 6, 1973, medical note from E. Handler, MD, because he was an examining physician (Exhibit 7F). In short, the records in existence during the period of time at issue show the claimant had lower extremity functional limitations, but was considered capable of performing sedentary work activities that minimally impacted his feet and knee problems.

R. 13.

Plaintiff argues the ALJ erred in determining that there was no objective medical evidence for the period at issue to support the level of severity alleged by the Plaintiff, given all of the impairments to which Plaintiff testified.  R. 13.  He argues that the ALJ erred in failing to properly consider his testimony in determining his credibility, in light of the long-term congenital debilitating nature of his medical conditions, which was confirmed in objective testing by Dr. Shoemaker, who opined that Plaintiff could not work as a result of the congenital conditions.  R. 214.  Plaintiff argues that his medical condition was congenital "which hypothetically would have been the same condition that existed in the early 1980s [until] the present."  Doc. 19.

The Commissioner contends that the ALJ was entitled to rely on the lack of any objective medical evidence of disabling physical limitations or concentration deficits prior to Plaintiff's date last insured. R. 13.  The Commissioner points to Dr. Handler's 1973 report, in which Plaintiff did not exhibit any physical limitations as he walked independently and showed normal left knee range of

motion (R. 278); Dr. Khan's 2009 treatment notes which were generally unremarkable (R. 290, 293); and the lack of any diagnoses of any mental impairment (R. 214, 221, 224, 226, 228, 231, 278). The Commissioner also points to Plaintiff's 2009 mental status examination, which was "grossly normal," arguing it undercuts Plaintiff's allegation of severe concentration problems that would preclude him from performing routine and uncomplicated tasks (R. 12, 290).

Plaintiff argues that the ALJ erred in relying on Dr. Handler's opinion as evidence that Plaintiff was capable of performing sedentary work. Plaintiff contends the opinion of Dr. Handler is not conclusive on the issue of whether Plaintiff was capable of performing sedentary work during the relevant period because Dr. Handler does not appear to have evaluated Plaintiff's congenital conditions, but focused only on his left knee and lumbar spine limitations resulting from the accident. R. 278. While it is true that Dr. Handler's one-page letter from August 1973 focuses on Plaintiff's knee and back injuries from his fall at the time, Plaintiff is alleging other *spinal and foot* impairments which Dr. Handler's restrictions should have also incorporated if they had an impact on his condition: "He is able to ambulate without assistance, no limitation of motion in left knee and no swelling. However, due to his previous history and on the basis of medical science and my own experience, I would advise [Plaintiff] should be excluded from any physical activity." R. 278.

The ALJ in this case did not to credit Plaintiff's testimony about his pain thirty years prior to the hearing because there was a lack of medical records to support his claimed impairments from that period. The ALJ is required to articulate specific and adequate reasons for rejecting Plaintiff's testimony, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). In this case, the ALJ offered specific reasons for discrediting Plaintiff's subjective

statements about his impairments from thirty years before, as directed by the Social Security Regulations, including the lack of objective medical evidence from the time period and the relatively contemporaneous 1973 letter from Dr. Handler. These are the factors the ALJ is directed to consider, thus, the ALJ's reasons for discounting Plaintiff's testimony are supported by substantial evidence. 20 C.F.R. §§ 404.1529; 416.929.

### C. Hypothetical to the VE

Plaintiff contends that the ALJ erred in failing to present to the VE all of Plaintiff's limitations as he described in his testimony, including limitations from back pain and numbness and tingling in his legs which caused him "for many years" to be limited in sitting, standing, walking, and concentrating. Doc. 19 at 17. The Commissioner argues that the ALJ's hypothetical question accurately reflected Plaintiff's limitations.

Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id*. at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

As explained above, the ALJ's findings as to Plaintiff's credibility concerning his subjective complaints was based on substantial evidence and therefore, the ALJ was not required to include those limitations she found not to be credible. Plaintiff did not receive any mental health treatment that he even alleges, much less produced the records for, and the single state agency psychologist who reviewed the file found there was insufficient evidence of a psychiatric condition. R. 262. The ALJ did not find any mental limitations, thus, this case is distinguishable from *Winschel v. Commissioner of Social Security,* 631 F.3d 1176 (11th Cir. 2011), which requires that mental limitations be

accurately reflected in any hypothetical to the VE.  Nonetheless, the ALJ did include a limitation to routine, uncomplicated type of work as part of the RFC.  R. 52, 54.  Thus, the hypothetical to the VE contained Plaintiff's limitations that the ALJ found to be credible, and the ALJ was entitled to rely on the VE's testimony.

## IV.   CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities have been affected by his ailments to some degree.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.   Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 19, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record